**Herbert Leo BUSHAW, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19481.**

United States Court of Appeals
Ninth Circuit.

Nov. 17, 1965.

John J. Bardet, Paul G. Bower, Los Angeles, Cal., for appellant.

Thomas R. Sheridan, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Sec., David R. Nissen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before DUNIWAY and ELY, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge:

Appellant, Herbert Leo Bushaw, was indicted and convicted by a jury of attempted bank robbery, in violation of 18 U.S.C. § 2113(a).

In this appeal, Bushaw contends that the evidence was insufficient to sustain a conviction and that the trial court erred in permitting the government to introduce in evidence inadmissible and prejudicial statements, under the guise of impeaching its own witness. For the reasons hereafter stated, we find no reversible error.

On February 7, 1964, an attempt was made to rob a branch of the Bank of America located in the Springdale Shopping Center, Huntington Beach, California. At the time, Bushaw was employed at Beverly Brisson's Carpet Shop, which was also in the Springdale Center. A portion of the carpet store was used as a Post Office substation.

About two weeks before the robbery attempt, an unidentified male telephoned the manager of a restaurant in the shopping center and asked if the manager knew of someone with a car who wanted

to make fifteen or twenty dollars. The manager inquired among a group of youths, and Dennis "Rocky" Gomes came to the telephone. The caller told Rocky that he ran a delivery service and needed someone to deliver receipts from a bowling alley to the bank. Rocky agreed to make a delivery, but the exact details were not related to him until February 5, when the delivery was scheduled for the next day. Later, the job was postponed for 24 hours, "because the receipts were not ready."

The caller instructed Rocky to take a briefcase from a specified place in the bowling alley to Mr. Svoboda, the manager of the bank, at 1:45 P.M., and then return it to the bowling alley. The caller told Rocky that he would be paid at a nearby filling station.

Rocky became suspicious, and both the police and the FBI were notified. On February 7, at the FBI's request, Rocky carried out the caller's instructions; he drove to the bowling alley, entered, and found the briefcase. He carried it and two attached envelopes to his car, where a policeman was hiding. As Rocky drove to the bank, the policeman checked the briefcase and envelopes; he found that the briefcase was empty, that one envelope contained a blank paper and the other, a key to the briefcase.

At the shopping center, Rocky parked his car, took the briefcase into the bank and gave it to Mr. Svoboda. At that moment, Mr. Svoboda received a telephone call. The caller threatened the manager's family unless he placed $21,000 in the briefcase. Svoboda filled the briefcase with blank deposit slips and gave it to Rocky, who returned to the bowling alley, where he replaced the briefcase. He then drove to the filling station to collect his pay; no one ever came to pay him.

On February 6, the day originally set for the delivery, Bushaw was alone in the carpet shop. Earlier he had informed his employer, Mrs. Brisson, that he had a carpet appointment at 1:30 P.M. with a Mrs. Carrison at 9202 La Poloma. (In fact, La Poloma Street had no number 9202, and no residents of the area were named Carrison.) At noon, Bushaw requested Mrs. Brisson's permission to close the store and Post Office in order to keep the appointment. She first refused this request, but later granted it. However, Bushaw then told her that the appointment had been reset for February 7.

On February 7, Bushaw, who had no driver's license, was again alone in the store with no vehicle. About noon, he asked Mrs. Smith, Mrs. Brisson's sister, to let him use her car in order to keep the carpet appointment. Mrs. Smith refused, but offered to drive Bushaw to his appointment, as she had done on previous occasions. He did not accept this offer. Instead, he borrowed a 1955 Packard from a barber in a nearby shop.

On the day of the attempted robbery, police officers saw the 1955 Packard drive into the bowling alley parking lot. They watched Bushaw enter the bowling alley and walk directly to the men's room. He was carrying a large tool box in his right hand, on which he wore a glove. Shortly thereafter, he came out with a briefcase, which he placed on the floor immediately adjacent to the door of the men's room.

Bushaw remained at the bowling alley until Rocky took the briefcase. Then, he ran to his borrowed car and drove it to the shopping center, where he entered the parking lot and drove to the area in front of the carpet store.

Bushaw was next seen driving out of the shopping center parking lot just after Rocky had left the bank. Bushaw drove in the direction of the filling station, where Rocky was to be paid. However, he turned off and stopped at a vacant house. He talked to a woman next door, and told her that he had a carpet appointment at the vacant house. He then returned to the shopping center, where he parked the car and gave the keys to the barber. Later that afternoon, he was arrested at the carpet store.

When Bushaw left the bowling alley, he did not take his toolbox from the men's room. No one ever came to claim it or the briefcase which Rocky returned. However, just prior to his arrest, Bushaw told the barber that his toolbox had been stolen.

The government's evidence included a register receipt and a price tag, both for $3.97 plus 40¢ excise tax, from a K-Mart store. The register receipt was found in the carpet store truck Bushaw sometimes used; the price tag, in the 1955 Packard. The K-Mart manager testified that the register receipt and price tag showed a sale of a briefcase like the one used in the robbery. The government also introduced a glove found hidden in the carpet store which matched the one worn by Bushaw; a pad of paper found in the store which matched the blank paper found in the robbery envelope; and envelopes from the postal substation which were identical to the robbery envelopes.

The only evidence that Bushaw was not an active participant in the robbery attempt is his own testimony that he was an innocent pawn of a third person. Bushaw testified that an unidentified man arranged with him to make a delivery from the carpet store to the bowling alley. After one postponement, the man appeared at the carpet store at 1:30 P.M. on February 7, carrying a briefcase. He told Bushaw that the briefcase had been exposed to radioactive material, which Bushaw testified was the reason he wore a glove and carried the briefcase inside his toolbox. Bushaw also testified that the stranger purchased two envelopes from the postal substation and borrowed a piece of paper from him.

This alibi was not corroborated in any respect, and we think it barely credible. It is certainly insufficient to overcome the government's evidence. But Bushaw argues that the government's case is fatally defective because it failed to show that Bushaw made the intimidating telephone call to Mr. Svoboda or that Bushaw had time to make the call. To support this argument, Bushaw uses estimates of the times of various events testified to by a number of witnesses. Bushaw contends that these estimates show that he was under surveillance except for a period of less than two minutes. In his view, two minutes is too short a time to park a car, enter the locked carpet store, dial the telephone, talk to Mr. Svoboda, and return to the car.

■ A single witness cannot be expected to recall the exact times at which various events occurred. Here, where a reconstruction of the events depends upon the testimony of a number of witnesses, each of whom observed a different event and fixed its time, Bushaw's analysis is hardly conclusive. The jury could have found that he was out of surveillance for a period of five or even ten minutes. In any event, whether Bushaw had time to call Mr. Svoboda was a question of fact for the jury.

■ The government does not have to prove its case by direct evidence alone. Here, we think that the government's evidence, both direct and circumstantial, overwhelmingly supports the jury's conclusion that Bushaw made the telephone call and planned this robbery attempt.

Bushaw's second ground of appeal raises a more substantial problem. On the night of the robbery attempt, three FBI agents called on Mrs. Brisson. The interview resulted in a signed statement in which Mrs. Brisson said that Bushaw had often tried to talk her into marriage and had recently asked if she would change her mind if he came into some money. He also talked of fixing up the carpet shop.

Mrs. Brisson later repudiated the statement and told the United States Attorney that she would not give such testimony at the trial. Nevertheless, the government called her as a witness, and when she failed to testify in accordance with her statement to the FBI, it was used to impeach her. The defense objected on the ground that the government was not surprised by Mrs. Brisson's

testimony. The trial court overruled the objection.

A party must show both surprise and damage before being permitted to impeach his own witness. Bateman v. United States, 9 Cir. 1954, 212 F.2d 61, 69. Under the circumstances of this case we doubt that the prosecutor was entitled to assume that Mrs. Brisson would testify in accordance with her written statement to the FBI. But if we were to accept the argument that he was entitled to make that assumption, he was still not free to impeach her with the statement unless her testimony affirmatively damaged the government's case. United States v. Graham, 2 Cir. 1939, 102 F.2d 436, 441. He may not claim affirmative damage from Mrs. Brisson's mere failure to testify favorably as he had hoped. Absent affirmative damage, impeachment was improper. A party "is not permitted to get before the jury, under the guise of impeachment, an ex parte statement of [a] witness, by calling him to the stand when there is good reason to believe he will decline to testify as desired, and when in fact he only so declines." Kuhn v. United States, 9 Cir. 1928, 24 F.2d 910, 913.

Although we do not commend the government's trial tactics and think the trial court erred in permitting the government to impeach Mrs. Brisson, the evidence against Bushaw was so overwhelming that the jury could only have concluded that he was guilty. Mrs. Brisson's statement was merely peripheral and had no direct connection with the robbery events. In these circumstances, we are not left with that "grave doubt" of prejudice which would require us to reverse this case. See Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Our review of the evidence convinces us that the error in this case did not affect Bushaw's substantial rights. We hold it to be harmless error under Rule 52(a), Federal Rules of Criminal Procedure.

Affirmed.