UNITED STATES of America, Appellee,

v.

George Samuel Walter ROGERS, Appellant.

No. 76–1026.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1976.

Decided Dec. 30, 1976.

Stephen M. Sharum, Fort Smith, Ark., for appellant.

Sam Hugh Park, Asst. U. S. Atty., Fort Smith, Ark., for appellee; Robert E. Johnson, U. S. Atty., Fort Smith, Ark., on brief.

Before GIBSON, Chief Judge, LAY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

George Samuel W. Rogers appeals from his conviction of armed robbery on a United States military reservation in violation of 18 U.S.C. §§ 2111 and 2. He was sentenced to an indefinite term of imprisonment pursuant to the Youth Corrections Act, 18 U.S.C. §§ 5010 *et seq.*

Appellant contends that prejudicial error was committed by the District Court in (1) the denial of the motion to suppress evi-

dence seized from his automobile; (2) the denial of the discovery motions insofar as they sought the criminal records of government witnesses; (3) the overruling of a motion for mistrial based on a comment by the prosecutor; and (4) the admission of a statement made to FBI agents by a confederate, Walter Baker, during the investigation of the crime. The fourth contention implicates both the hearsay exceptions to the Federal Rules of Evidence and the Confrontation Clause embodied in the Sixth Amendment of the Constitution.

The principal facts are undisputed:

At approximately 11:15 p. m. on June 3, 1975, four military personnel were robbed by three armed men within the confines of Fort Chaffee, a United States military installation in Arkansas. The victims immediately notified the military police and informed them of the license number and description of the automobile used by their assailants. At approximately 11:45 p. m., the military police discovered inside the fort a 1956 Chevrolet that matched the license number and description given by the victims. Its windows and doors were open and it had apparently been abandoned. An investigator observed in plain view a cardboard box with markings for a Titan .38 pistol and a sales slip from the Oklahoma Tire and Supply Company inside the vehicle. The military police immediately searched the inside of the car and seized the empty box, the sales slip, and other articles.[1]

The military police ascertained that a handgun had been purchased earlier in the day at the Oklahoma Tire and Supply Company by Private First Class Walter Baker using appellant's name and identification. Baker was apprehended after midnight while attempting to enter the gate to Fort Chaffee. Civilian authorities arrested appellant on the morning of June 4 after a license identification check of the 1956 Chevrolet disclosed that he was the owner of the vehicle. Baker subsequently made statements incriminating to both himself and appellant.[2]

Appellant filed pretrial motions to suppress the evidence obtained from the automobile and to obtain exculpatory information, including the criminal records of any persons the prosecution intended to call as witnesses at trial. The District Court[3] denied these motions. Appellant did receive a list of witnesses prior to trial, however, and the government represented at that time that it had no knowledge of any criminal records pertaining to the intended witnesses other than those concededly known by defense counsel. Appellant was found guilty after trial by jury, and this appeal followed.

## I. *Preliminary Contentions*

We find little merit to the first three of appellant's contentions and thus dispose of them summarily.

### A. *The Warrantless Search*

First, we conclude that the warrantless search of appellant's automobile was reasonable under the circumstances, and the District Court did not err in denying the motion to suppress evidence of the fruits of the search. Exigent circumstances justified the search. *See Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Thompson v. McManus,* 512 F.2d 769, 770 (8th Cir.), *cert. denied,* 421 U.S. 1014, 95 S.Ct. 2421, 44 L.Ed.2d 683 (1975). In addition, because the search occurred on Fort Chaffee, a closed military base, there is even less reason to question the propriety of the search under the cir-

---

1. Other articles seized included bullets, an eyeglass case, other sales slips bearing the names George S. Rogers and Sam Rogers, a checkbook containing checks and deposit slips in the name of George S. Rogers, and a photograph later identified as that of appellant.

2. It was during this time that Fort Chaffee was being used to house Vietnam refugees, and the regular cadre had been substantially expanded. Both Baker and appellant were members of the military police unit attached to Fort Chaffee.

3. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

cumstances of this case. *See United States v. Vaughan,* 475 F.2d 1262, 1264 (10th Cir. 1973); *United States v. Burrow,* 396 F.Supp. 890 (D.Md.1975); *United States v. Rogers,* 388 F.Supp. 298 (E.D.Va.1975).

### B. *Discovery of Criminal Records of Witnesses*

■ Second, the District Court had full discretion to deny appellant's motion for a list of prospective witnesses and their criminal records, if any, since such discovery is not required under Fed.R.Crim.P. 16(a).[4] *United States v. Taylor,* 542 F.2d 1023 (8th Cir., 1976), slip op. at 5. *See United States v. Barnes,* 486 F.2d 776, 777–78 (8th Cir. 1973); *United States v. Hamilton,* 452 F.2d 472, 479 (8th Cir. 1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972). *See also Will v. United States,* 389 U.S. 90, 99, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). Moreover, the prosecution fulfilled any duty it might arguably have had under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by disclosing its intended witnesses to appellant twenty-four hours before trial and by informing him at that time of the only witnesses with criminal records: Baker and Curtis, both of whom were participants in the crime with which Rogers was charged. We thus find no prejudical error in the denial of the discovery motion.

### C. *Prosecutor's Comments*

■ Third, while it was improper for the prosecutor to characterize a check introduced into evidence by appellant as "hot,"[5] we do not, in light of the substantial evidence of guilt on the record, find that such error was so prejudicial as to deprive him of a fair trial.

### II. *Use of Baker's Extrajudicial Statement*

The most serious contention on appeal relates to the government's use at trial of an extrajudicial statement made by Walter Baker, appellant's alleged confederate. The facts relating to the statement are as follows:

Baker had previously entered a plea of guilty in a military court-martial to the same robbery at Fort Chaffee with which appellant is charged. The government called him as a witness at appellant's trial. Baker essentially testified that he could not identify appellant; that, while he had pleaded guilty to the offense of robbery, he could not remember the robbery incident; and that, although he recalled giving a statement regarding the incident to an FBI agent, he did not remember the content of that statement. After this testimony, the District Court sequestered the jury in order to question Baker further about his lack of memory. Baker was allowed to read the statement, but he could not determine that it was the statement he had made. Counsel for appellant, asserting a belief that statements the prosecution sought to elicit from Baker might be self-incriminating, moved that the Court advise Baker of his Fifth Amendment privilege. The District Court, noting its own concern with possibilities of perjury, then admonished Baker that he had the right not to testify because of potential self-incrimination. When the jury returned, the prosecution attempted further examination, with the following result:

---

4. In adopting the 1975 amendments to the Federal Rules of Criminal Procedure, Congress rejected proposed Fed.R.Crim.P. 16(a)(1)(E), which would have allowed criminal defendants to discover the names and addresses of prospective government witnesses. It has been held in appropriate circumstances, however, and upon due motion, that the District Court has inherent power to compel disclosure of the names of government witnesses. *United States v. Cannone,* 528 F.2d 296, 300 (2d Cir. 1975); *United States v. Jackson,* 508 F.2d 1001, 1006–07 (7th Cir. 1975); *United States v. Richter,* 488 F.2d 170, 173–75 (9th Cir. 1973).

5. Appellant testified on his own behalf at trial. In an apparent attempt to demonstrate lack of motive to commit the crime of robbery, defense counsel introduced a check for $250 written by appellant on May 27, 1975. After appellant identified the check as his own, the prosecutor stated:

> I would like to see it. If the defendant wants to go ahead and write hot checks he can introduce them all in evidence.

Q. Mr. Baker, I wish to ask you as to whether you wish to testify further after as to the involvement of Mr. Rogers in the purported armed robbery that you and Mr. Curtis were involved in?

A. No, I ain't got nothing to say, because I really don't remember anything anyway.

Q. You are saying you do not wish to make any further statements or are you saying you just don't remember?

A. The only thing I would say I cannot be sure whether or not I was telling the truth anyway, so rather just not say anything else.

Q. Are you invoking what is commonly called the Fifth Amendment?

A. Yes, I do.

Q. At this time, Your Honor, we would offer the witness for cross examination.

THE COURT. All right. You may cross examine * * *.

### CROSS EXAMINATION

Q. I believe I have no questions of this witness.

Baker was excused and FBI Special Agent Thomas H. Brown was called as the next government witness. Brown testified that he had interviewed Baker on August 18, 1975, while Baker was incarcerated at Fort Hood, Texas, and that Baker had, with full knowledge of his constitutional rights and in the presence of an attorney, made a statement to Brown which was subsequently transcribed. Defense counsel objected to the reading of this unsworn and unsigned statement as hearsay. The District Court ruled:

Be partly sustained and partly overruled. Ladies and gentlemen of the jury, you will consider any testimony from Mr. Brown concerning Mr. Baker as being testimony to impeach Mr. Baker. Any testimony concerning any other person including the defendant in this case will not be received in evidence in this case.

The statement was then read into evidence in its entirety.

The statement disclosed that earlier on the day of the crime Baker had accompanied appellant to the Oklahoma Tire and Supply Company, where, following appellant's instructions, Baker had purchased a gun using appellant's identification. The statement further described the robbery and placed appellant with Baker as two of the three who held up the soldiers.

Determining the propriety of permitting Baker's extrajudicial statement to be read to the jury requires the resolution of two issues: (1) whether the statement was admissible under evidentiary standards, and (2) whether admission of the statement violated appellant's Sixth Amendment right of confrontation.

### A. *Evidentiary Standards*

Appellant contends that allowing Baker's statement to be read to the jury amounted to the use of prejudicial hearsay. We conclude, however, that use of the statement was proper as impeachment of Baker's in-court testimony.[6] Several requirements founded in fundamental fairness govern the use of prior inconsistent statements for impeachment. All these requirements were satisfied here.

### (1) Inconsistency

The first requirement, of course, is that the statements be inconsistent. The reason for permitting the use of inconsistent statements to attack the credibility of a witness does not flow from their greater proximity in time to the offense; rather, it rests upon the "notion that talking one way on the stand and another way previously is

---

**6.** That Baker was the government's own witness is no bar to its impeaching him. Fed.R. Evid. 607.

Early common law cases assumed that surprise was a prerequisite to impeachment of a party's own witness. While we think the government was in fact surprised in this case, we are not at all sure that surprise is any longer required in light of Rule 607. *See United States v. Morlang*, 531 F.2d 183, 189 n. 14 (4th Cir. 1975) (opinion of the court), and 531 F.2d at 193 (Butzner, J., dissenting).

blowing hot and cold, and raises a doubt as to the truthfulness of both statements." C. McCormick, Handbook of the Law of Evidence § 34, at 68 (2d ed. 1972). A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposite assertions have been made. Thus, inconsistencies may be found in changes in position; they may be implied through silence; and they may also be found in denial of recollection. *See* 3 J. Weinstein, Evidence ¶ 607[06], at 607–63 (1975).

█ The trial judge should have considerable discretion to determine whether evasive answers are inconsistent with positive assertions of an extrajudicial nature previously given. As Judge Weis said in *Agnellino v. State of New Jersey,* 493 F.2d 714, 730 (3d Cir. 1974):

> A defendant who chooses to answer questions with half truths cannot claim constitutional protection to remain silent as to the other half. A complete answer to a question may be as inconsistent with a partial reply as one completely different in detail.

A claimed inability to recall, when disbelieved by the trial judge, may be viewed as inconsistent with previous statements when the witness does not deny that the previous statements were in fact made. Dean Wigmore supplies the reason:

> [An] unwilling witness often takes refuge in a failure to remember, and the astute liar is sometimes impregnable unless his flank can be exposed to an attack of this sort. [footnote omitted]

3A J. Wigmore, Evidence § 1043, at 1061 (Chadbourn rev. 1970).

The trial judge must be accorded reasonable discretion in determining whether a claim of faulty memory is inconsistent with statements previously given. In *United States v. Insana,* 423 F.2d 1165, 1170 (2d Cir.), *cert. denied,* 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970), the Second Circuit said:

> To be sure there may be circumstances where the witness in good faith asserts that he cannot remember the relevant events. In such circumstances the trial court may, in its discretion, exclude the prior testimony. . . . However, this does not mean that the trial judge's hands should be tied where a witness does not deny making the statements nor the truth thereof but merely falsifies a lack of memory. Here Schurman had testified in detail before the grand jury, had already pleaded guilty, and on the stand identified Insana and testified to two relevant events. Based upon these facts, the only rational conclusion is that Schurman was fully aware of the content of his grand jury testimony but wished to escape testifying against Insana and thus make a mockery of the trial. . . . Thus we believe that these statements are admissible . . . to impeach his claim of lack of memory . . . .

In this case Baker had previously pleaded guilty in military court to the same offense. When called to the stand he admitted his guilt and prior conviction. He admitted giving a statement to the government agent but testified he could not recall what he had said. He testified that he was not familiar with appellant. When the prosecutor attempted to refresh Baker's memory by asking him if he had not told Agent Brown that he first met appellant on June 1 at the Flame Club through a PFC Troy, Baker replied that he could not recall making that statement.

From these facts and Baker's equivocal answers, the District Court could well infer that Baker was fully aware of the content of his prior statement and was simply attempting to avoid implicating appellant. A conclusion that appellant's prior statement was inconsistent with his denial of memory at trial was thus justified.

### (2) Relevancy

█ A second requirement for admissibility is that the inconsistency relate to a matter of sufficient relevancy that the prosecution's case will be adversely affected if the inconsistent testimony is allowed to stand. *See Goings v. United States,* 377 F.2d 753 (8th Cir. 1967). It would be unfair

to permit the use of extrajudicial statements to impeach testimony extraneous to the issues of the case, particularly if related statements damaging to the defendant are disclosed to the jury in the process. Courts must be watchful that impeachment is not used as a subterfuge to place otherwise inadmissible hearsay before the jury. *See United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975); *United States v. Coppola,* 479 F.2d 1153, 1158 (10th Cir. 1973); *United States v. Dobbs,* 448 F.2d 1262, 1263 (5th Cir. 1971); *United States v. Johnson,* 427 F.2d 957, 961 (5th Cir. 1970); *Bushaw v. United States,* 353 F.2d 477, 481 (9th Cir. 1965), *cert. denied,* 384 U.S. 921, 86 S.Ct. 1371, 16 L.Ed.2d 441 (1966); *Fontaine v. Patterson,* 305 F.2d 124, 130 (5th Cir. 1962).

In contrast to the witness in *United States v. Morlang, supra,* Baker had never, before trial, taken the position that he could not identify appellant or that he could not recall if appellant was one of the robbers. This doubt about appellant's participation expressed by one of the actual participants was indeed potentially injurious to the government, and it was of sufficient relevance to justify impeachment by use of the inconsistent statement.

### (3) Compliance with Rule 613

The Federal Rules of Evidence impose certain express requirements for use of impeaching inconsistent statements. Fed. R.Evid. 613(a) requires that the prior statement be disclosed, on request, to opposing counsel. Fed.R.Evid. 613(b) requires that, if extrinsic evidence is to be used to prove the prior statement, the witness must be afforded an opportunity to explain or deny it, and the opposing party must have an opportunity to interrogate the witness about it. Both these requirements were met here.

### (4) Limiting Instructions

As a final requisite to fairness, the District Court must adequately instruct the jury about the limited purpose for which the prior inconsistent statement is admitted. We think the District Court gave adequate guidance to the jury here. Before permitting the statement to be read by Agent Brown, the Court instructed the jury that (1) the testimony was only to impeach Baker, and (2) the testimony concerning any other person "including the defendant" would not be received in evidence in the case.[7] At the conclusion of the government's case, the District Court gave the following cautionary instruction:

Before I ask the other side to make Motions I will say this: Ladies and gentlemen of the jury, I want to give what might be called an admonition or an explanation, either one. In the course of presenting evidence to this jury a witness, a black boy named Baker was called and placed under oath and ordered to testify. He had testified just a little bit when the government who had called the witness asked for permission to examine him as a hostile witness, although they had called him. We in the past have had a doctrine that the side who called a witness could not impeach a witness; however, the Federal Rules of Evidence now provide that the creditability of a witness may be attacked by any party including the party calling him. So under those circumstances the government was permitted to introduce evidence to impeach the denial of Mr. Baker that he had not made a particular statement. You will recall that the Court directed after asking Mr. Baker if he could read and write, the Court directed that Mr. Baker be shown a statement that the government contended that he had made, Mr. Baker did say that he could read and write and he read the statement and answered a question or two concerning it. Then we permitted the government to call Special Agent Brown of the FBI who was called by the government to impeach Mr. Baker by testifying to what Mr. Baker had formerly told him, and the Court

---

**7.** Appellant did not ask the District Court to explain the meaning of "impeach." The District Court would no doubt have been receptive to such a request had it been timely made, but we cannot say on this record that the failure to amplify the instructions was plain error.

permitted that. Now, you are instructed that the evidence of Mr. Brown concerning a statement made to him by Mr. Baker will be considered by the jury only in determining whether or not Mr. Baker has been impeached and what creditability, if any, you will give to the testimony of Mr. Baker.

Finally, in its final charge to the jury, the District Court said:

> An admission or incriminatory statement made or act done by one Mr. Baker outside of court, may not be considered as evidence against another, Mr. Rogers, who was not present and so did not see the act done or hear the statement made.

We think these instructions clearly and carefully informed the jury of the limited use to be made of Baker's statement.

■■■■■ We conclude, then, that all evidentiary standards for impeachment by prior inconsistent statements were met here.[8]

**B.** *The Right of Confrontation*

■■■ Appellant contends that the use of Baker's statement after Baker claimed memory lapse and asserted his Fifth Amendment privilege deprived appellant of his right of confrontation. We must therefore make a separate and distinct determination whether such use, although proper under evidentiary standards, nonetheless unconstitutionally infringed appellant's right of confrontation.[9]

While recognizing that the hearsay rule and the right of confrontation and cross-examination may stem from the same roots, the Supreme Court has declined thus far to define the exact circumstances within which hearsay admitted for a limited purpose under federal evidentiary rules may nonetheless offend a defendant's Sixth Amendment rights to such an extent that

---

**8.** The government also contends that Baker's statement was against his penal interest and thus could have been admitted as substantive evidence under the "statement against interest" exception to the hearsay rule. *See* Fed.R. Evid. 804(b)(3). That Rule provides:

> (b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed.R.Evid. 804(a) provides that one who asserts a lack of memory or claims his Fifth Amendment privilege is "unavailable" for purposes of Fed.R.Evid. 804(b)(3). Baker had already pleaded guilty to the robbery before a military tribunal when the statement was made, however, and thus it is arguable that this plea of guilty ended the threat of further penalty for the robbery. *See Wilkes v. Dinsman,* 48 U.S. (7 How.) 89, 123, 12 L.Ed. 618 (1849); *United States v. Bayer,* 156 F.2d 964, 970 (2d Cir.), *rev'd on other grounds,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *cf. United*

*States ex rel. Pasela v. Fenno,* 76 F.Supp. 203, 208 (D.Conn.1947), *aff'd,* 167 F.2d 593 (2d Cir.), *cert. dismissed,* 335 U.S. 806, 69 S.Ct. 29, 93 L.Ed. 363 (1948). On the other hand, it would seem that his statement contained an admission of an illegal purchase of a gun, a separate offense clearly against penal interest. Use of that part of the statement as substantive evidence, however, would not cure the use of his statement that appellant was one of the robbers if the statement was no longer in fact against Baker's penal interest when given. He had not yet been sentenced for the robbery when he made the statement, and the danger here might well be that his interest in obtaining a lesser sentence in return for his cooperation could have affected the reliability of the statement. The District Court is vested with discretion to exclude or limit the use of relevant evidence if its probative value may be outweighed by the danger of unfair prejudice, Fed. R.Evid. 403, and the Court did not abuse its discretion in limiting the use of the statement to impeachment purposes.

**9.** Our determination that use of the statement was permissible under the Rules of Evidence does not, of course, resolve the constitutional question. The history of the enacting of the Rules indicates that the drafters attempted to avoid codification of constitutional rules. For example, Rule 804(b)(3) "does not purport to deal with questions of the right of confrontation." Advisory Committee Note, Fed.R.Evid. 804(b)(3).

his conviction must be set aside.[10]  *See Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

Certain principles, however, are established.  Not every use of extrajudicial statements offends the Constitution.  A dying declaration, for example, has traditionally been a well recognized exception to the right of confrontation; its reliability is so respected that no prejudice is seen to result from its use despite the unavailability of the declarant for cross-examination.  *See Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965);  *Mattox v. United States,* 146 U.S. 140, 151, 13 S.Ct. 50, 36 L.Ed. 917 (1892).  At the other extreme, our courts have recognized that in some circumstances a declarant can be present and take the stand, but his lapse of memory or assertion of privilege can prejudicially prevent a defendant from offsetting the damaging effect of the extrajudicial statement.  *See Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).  *See also Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966);  *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968);  *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[11]

The relevant factual inquiry is whether, under the circumstances, the unavailability of the declarant for cross-examination deprived the jury of a satisfactory basis for evaluating the truth of the extrajudicial declaration.

*United States v. Adams,* 446 F.2d 681, 683 (9th Cir.), *cert. denied,* 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 257 (1971).  *See Dutton v. Evans, supra,* 400 U.S. at 88, 91 S.Ct. 210;  *California v. Green, supra,* 399 U.S. at 161, 90 S.Ct. 1930;  *United States v. Menichino,* 497 F.2d 935, 943 (5th Cir. 1974);  *United States v. Baxter,* 492 F.2d 150, 177 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

The right of cross-examination of opposing witnesses is a core value in our system of justice.  It is through this testing process that the truth is seen most likely to emerge.  "The decisions of [the Supreme] Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-deter-

10. In *California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970), the Court said:

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law.  Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. . . .  The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

11. As noted in note 8, *supra,* the government contends the extrajudicial statement was against Baker's penal interest and thus could properly have been admitted as substantive evidence under the "statement against interest" exception to the hearsay rule.  If the statement could have been admitted as substantive evidence, the government contends all *Bruton v.*

United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), confrontation problems are avoided, because the statement used in *Bruton* involved inadmissible hearsay.  There, a confession by Bruton's codefendant in a joint trial was introduced against the codefendant.  The confession contained statements inculpating Bruton.  The codefendant did not take the stand.  The Supreme Court held that under those circumstances it was not possible to give a limiting instruction which would adequately protect Bruton from having the statement, which was hearsay as to him, used against him. In *United States v. Kelley,* 526 F.2d 615, 620 (8th Cir. 1975), *cert. denied,* 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976), we recognized that:

> * * *  *Bruton* involved no recognized exception to the hearsay rule.  Indeed it has become well settled that the *Bruton* rule is limited to circumstances where the out-of-court statements are inadmissible hearsay.  [footnotes omitted]

For the reasons discussed in note 8, *supra,* we decline the invitation to expand the use of statements against uncertain penal interest as substantive evidence in dealing with the Confrontation Clause.  No liberalization of evidentiary rules can circumscribe the fundamental right to confrontation and cross-examination.

mining process in criminal trials by assuring that 'the trier of the fact [has] a satisfactory basis for evaluating the truth of the prior statement.' *California v. Green*, 399 U.S., at 161, 90 S.Ct. 1930." *Dutton v. Evans, supra*, 400 U.S. at 89, 91 S.Ct. at 220.

■ Our Court has construed the Supreme Court decisions as requiring a case-by-case analysis. *United States v. Carlson*, 547 F.2d 1346 at 1357 (8th Cir. 1976); *United States v. Kelley*, 526 F.2d 615, 620 (8th Cir. 1975), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976). The primary consideration in this analysis is the extent to which the declarant is available to testify and be subject to cross-examination. We must consider the degree of prejudice to the fact-finding process resulting from the declarant's partial availability or nonavailability. In weighing this prejudice, we must consider, *inter alia*, whether the jury had an opportunity to weigh the credibility of the extrajudicial statement, whether the extrajudicial statement was crucial to the government's case, and, if the statement's use before the jury was limited by the trial judge, whether limiting instructions were given which were sufficient under all the circumstances to protect the defendant from impermissible reliance upon the statement by the jury.

### (1) Jury's Ability to Weigh the Extrajudicial Statement

■ In *Dutton v. Evans, supra*, the Supreme Court held that the confrontation clause was not violated when a witness testified that a participant in a killing had implied in conversation that the defendant had been the one responsible, since the witness was available for cross-examination on the question of whether the statement was in fact made, and the declarant's personal knowledge and identity and the role of the other participants were abundantly established by the witness' testimony and the declarant's conviction. *Id.*, 400 U.S. at 88, 91 S.Ct. 210. The absence of the declarant did not so impair the fact-finding process as to vitiate the conviction.

In the instant case, the witness and the declarant were the same person. The witness was available for cross-examination on the question whether the statement had been made, and his conviction for the robbery, which showed his involvement in the offense, was before the jury. In these circumstances, the reliability of the out-of-court statement was clear. The asserted inability to cross-examine the declarant about the substance of the statement could not have seriously impaired the jury's ability to judge its validity.

### (2) Importance of the Statement to the Government's Case

Baker's statement was not offered to prove that appellant was one of the robbers, but only to put in issue Baker's trial testimony that he was not familiar with appellant and could not remember the details of the robbery.

Baker's in-court equivocal statements, however, were amply refuted by other evidence in the case, detailed below. Thus the out-of-court statement, considered as impeachment, was not crucial to the government's case, and any inability on the part of the jury to weigh that statement's credibility could not have prejudiced appellant. *See United States v. Puco*, 476 F.2d 1099, 1103–04 (2d Cir.), *cert. denied*, 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973); *United States v. Adams*, 446 F.2d 681, 684 (9th Cir.), *cert. denied*, 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 257 (1971).

Appellant contends, however, that the jury could not have followed the court's limiting instructions and that the extrajudicial statement therefore had the effect of presenting information to the jury which, though not subject to cross-examination, would be used by the jury in assessing guilt or innocence. Appellant relies upon *Douglas v. Alabama, supra*, in which the extrajudicial statement was used in detail for impeachment as a prior inconsistent statement of a witness, causing the witness in each instance to invoke the Fifth Amendment. Among the statements read by the prosecution in *Douglas* was one naming the

defendant as the person who fired the shotgun blast which wounded the victim. The Supreme Court considered this to be "of crucial importance" since there was no other evidence from which this fact could otherwise be established. *Id.,* 380 U.S. at 417, 419, 85 S.Ct. 1074. The consistent assertion of the Fifth Amendment made it impossible to cross-examine the witness since he had not admitted the statement. In addition, the prosecutor who read the statement could not be cross-examined on the question whether the witness had made the statement. It thus "created a situation in which the jury might improperly infer both that the statement had been made and that it was true." *Id.* at 419, 85 S.Ct. at 1077.

Although the facts in the instant case appear to bear resemblance to those in *Douglas,* they vary markedly in two decisive respects on the issue of appellant's right of confrontation. First, Baker did not assert his Fifth Amendment privilege until after he had answered a number of questions, including an admission of his own participation in the robbery and the giving of a statement to government agents. His first evasion was a plea of lack of memory that was later followed by assertion of his Fifth Amendment rights. This evasion resulted not from any effort on the part of the government to make the witness unavailable to cross-examination, but was the result of "the suggestion, procurement or act of the accused." *See Motes v. United States,* 178 U.S. 458, 471, 20 S.Ct. 993, 998, 44 L.Ed. 1150 (1900). The defense attorney declined to cross-examine Baker and made no effort to recall him to the stand after Agent Brown had testified as to Baker's statement. We do not think in these circumstances that the declarant can be said to have been fatally unavailable for cross-examination.[12]

Second, the government's case did not depend upon using Baker's statement to identify appellant as one of the robbers. We have carefully examined the entire record and are convinced that the overwhelming evidence of guilt reduces the impact of the statement, even if erroneously considered as substantive evidence by the jury, to be no more than cumulative. The store manager at the Oklahoma Tire and Supply Company store where Baker purchased a gun the afternoon of the robbery using appellant's identification (Baker was under 21) identified appellant as the man who had stood beside Baker and supplied him with some of the money for the purchase. Jerry David Downard, an active duty military policeman, was in the store at the time and positively identified both Baker and appellant as the men who participated in the purchase. Billy E. Troy, a military policeman who knew both Baker and appellant and had been drinking with them earlier in the day testified that these men walked by his duty station in Fort Chaffee at about 11:00 p. m., a short time before the robbery. The victims agreed that the armed robbers walked over to

---

12. The defendant's task in cross-examining is, of course, no longer identical to the task that he would have faced if the witness had not changed his story and hence had to be examined as a "hostile" witness giving evidence for the prosecution. This difference, however, far from lessening, may actually enhance the defendant's ability to attack the prior statement. For the witness, favorable to the defendant, should be more than willing to give the usual suggested explanations for the inaccuracy of his prior statement, such as faulty perception or undue haste in recounting the event.

*California v. Green, supra,* 399 U.S. at 160, 90 S.Ct. at 1936.

In certain hearsay contexts, unavailability for direct examination is a prerequisite to the admission of testimony. *See* Fed.R.Evid. 804(a).

This requirement is merely the statement of a rule of preference: if a choice is to be made between admitting an out-of-court statement and in-court testimony, the latter is to be preferred. If, however, in-court testimony is unavailable, the out-of-court statement is admitted. C. McCormick, Handbook of the Law of Evidence § 253 (2d ed. 1972). The circumstances in which a witness is unavailable for hearsay purposes are now specified by Rule 804(a).

In the confrontation clause context, in contrast, as indicated in the text, the partial or complete unavailability of a witness for cross-examination is a factor to consider in determining whether a fundamental right has been denied. Whether a witness falls within one of the Rule 804(a) categories is irrelevant for this determination.

them as they were cleaning fish outside the barracks. Immediately following the robbery the robbers returned to a white Chevrolet and departed the scene. Two of the victims gave chase and identified the automobile by its license number before losing it. The automobile was registered in appellant's name. Two of the victims made positive identification of Eddie G. Curtis as one of the robbers. At about 11:30 p. m., about fifteen minutes after the robbery, Jeffrey Lloyd Hofstetter, another military policeman, was awakened from his sleep by Curtis, who wanted to borrow his car. Hofstetter refused because Curtis had been drinking, but offered to drive the men into town himself. Curtis, Baker and appellant were waiting when Hofstetter returned with the car; Curtis did not go into town, but Baker and appellant went with Hofstetter, who dropped appellant off on a street in Fort Smith. Hofstetter saw Baker give appellant what appeared to be money. Downard, who had observed the gun transaction and had reported it to the authorities, was lying on his cot shortly after the robbery when three men came into the barracks and began changing clothes near Baker's area. He identified both appellant and Baker. Later, he saw Baker, Curtis and appellant sitting on the porch where Hofstetter testified he met them with his car. Downard reported this information to authorities. Curtis admitted his participation. He claimed to be unable to identify the third robber but did testify that the third robber was the driver of the get-away car and that the third man went into town with Hofstetter and Baker. When appellant was apprehended he was carrying $95 in cash. He took the stand in his own defense and admitting have lied to authorities about his presence at Fort Chaffee and having made a number of statements inconsistent with his trial testimony.

All of the witnesses who supplied this evidence against appellant were available for cross-examination and were cross-examined to varying degrees. The overall evidence of appellant's guilt was overwhelming and his conviction cannot reasonably be said to have been influenced by the specula-tive use by the jury of the impeachment statement as substantive evidence.

### (3) Effect of Limiting Instructions

Our discussion of the limiting instructions in connection with the hearsay question, *supra* at 497–498, is equally applicable here. The thorough instructions given by the trial judge, limiting the use of Baker's statement to impeachment, served to protect the integrity of the fact-finding process, and so to preserve the values served by the right of confrontation.

Taking into account the nature of the extrajudicial statement, the limited purpose for which it was admitted, the clarity and completeness of the District Court's instructions on its use, the cumulative rather than crucial nature of the statement should the jury have failed to follow the limiting instructions, the absence of any government contrivance to defeat cross-examination, the presence of the declarant, and the degree of opportunity to examine him under oath, we hold that the use of the extrajudicial statement in this case did not impermissibly violate appellant's right of confrontation.

Accordingly, the judgment of conviction is affirmed.

LAY, Circuit Judge, dissenting.

I respectfully dissent.

The only difference between this case and *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is that the declarant here took the witness stand and asserted the Fifth Amendment, whereas in *Bruton* the declarant exercised his privilege against self-incrimination by refusing to take the stand. In both cases an ex parte statement incriminating the defendant was clearly inadmissible and should have been excluded. *See also Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

The majority reasons that the defendant was not denied the right of cross-examination because the declarant was "available" for cross-examination. This analysis is directly contrary to the government's admis-

sion in its brief, in urging the admissibility of the statement as an exception to the hearsay rule. The government there asserted:

> In the present case the defendant (sic) [declarant] was "unavailable" as a witness under Rule 804, because at the insistence of defendant's counsel,[1] he exercised his Fifth Amendment privilege not to testify, and because he alleged a lack of memory of the subject matter. . .

The test for "unavailability" for the purposes of the hearsay rules may not always be the same as that for the confrontation issue. However, where the witness has no recollection of the events and additionally is directed by the trial court that he need not testify by reason of his Fifth Amendment privilege there should be little doubt that he was unavailable for cross-examination under either test. This is particularly true, when the record shows the defense has never had the opportunity to cross-examine him.

The majority decision adds confusion and uncertainty to the law by holding that the *ex parte* statement was admissible to impeach witness Baker. This analysis is contrary to every precedent, not only those of this circuit,[2] but of every other court of appeals as well.[3] In fact, no authority exists to support the majority's holding that "a claimed inability to recall, when disbelieved by the trial judge, may be viewed as inconsistent with previous statements when the witness does not deny that the previous statements were in fact made." [4]

The majority relies on *United States v. Insana*, 423 F.2d 1165 (2d Cir.), *cert. denied*, 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970). That case is distinguishable. It not only involved the use of prior *sworn* testimony, the court there pointed out additional facts not present in this case:

> Where, *as here*, a recalcitrant witness who has testified to one or more relevant facts indicates by his conduct that *the reason for his failure to continue to so testify is not a lack of memory but a desire "not to hurt anyone,"* then the court has discretionary latitude in the search for truth, to admit a prior sworn statement which the witness does not in fact deny he made.

423 F.2d at 1170 (emphasis added).[5]

Judge William E. Doyle, writing for the Tenth Circuit, eloquently demonstrates why

---

1. Although the defense attorney raised the question concerning the defendant's possible self-incriminating testimony, it was the trial judge who directed the defendant if he claimed the Fifth Amendment privilege he did not have to testify.

2. *United States v. Dunmore*, 446 F.2d 1214 (8th Cir. 1971), *cert. denied*, 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); *Goings v. United States*, 377 F.2d 753 (8th Cir. 1967); and *United States v. Rainwater*, 283 F.2d 386 (8th Cir. 1960).

3. *United States v. Morlang*, 531 F.2d 183 (4th Cir. 1975); *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974); *United States v. Coppola*, 479 F.2d 1153 (10th Cir. 1973); *United States v. Hill*, 481 F.2d 929 (5th Cir.), *cert. denied*, 414 U.S. 1115, 94 S.Ct. 847, 38 L.Ed.2d 742 (1973); *United States v. Cunningham*, 446 F.2d 194 (2d Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 302, 30 L.Ed.2d 266 (1971); *United States v. Dobbs*, 448 F.2d 1262 (5th Cir. 1971); *United States v. Johnson*, 427 F.2d 957 (5th Cir. 1970); *United States v. Miles*, 413 F.2d 34 (3d Cir. 1969).

4. There is no indication from the record that the trial judge disbelieved the witness. Baker said he recalled giving the F.B.I. a statement, but he did not remember what he said. When questioned later, after government attempts to refresh his recollection by reading the statement, he said he could not recall that that was the statement he made.

5. Although it may be possible that Baker was trying to shield the defendant, there exists no evidence that he was trying to protect anyone other than himself by asserting his Fifth Amendment right against self-incrimination. The only evidentiary question answered by the declarant, one of the admitted robbers, was that he was not familiar with the defendant. Even assuming this to be affirmatively harmful to the government's case, this lone question and answer did not provide carte blanche authority for the government to place in evidence the complete statement of the witness detailing the defendant's alleged participation in the crime.

the fundamental rule is contrary to the holding of the majority opinion:

> The authorities recognize the danger of allowing prior statements to be freely introduced because of the difficulty of distinguishing between impeachment and substantive evidence. Inasmuch as the only purpose of impeachment is to neutralize the damaging testimony given, the impeaching evidence should be carefully restricted to compensating for the injury inflicted.
>
> It is clear . . . that positive damage and surprise to the party calling the witness are requisite. . . .
>
> . . . And the absolute rule remains that a party is not allowed under the guise of impeachment to bring before the jury an ex parte statement of a witness by calling him to the stand when there is reason to believe that he will refuse to testify and when in fact he does so refuse. The party is bound by his refusal and cannot introduce his prior statement by the expedient of asking him leading questions. . . .
>
> . . . Instead, one is impressed that an effort of the government was to bring about damage in order to justify the introduction of prior statements.

*United States v. Coppola,* 479 F.2d 1153, 1158 (10th Cir. 1973) [citations omitted].

And Judge Paul H. Roney, in *United States v. Dobbs,* 448 F.2d 1262 (5th Cir. 1971), observed:

> Impeachment is permitted only to remove the adverse effect of any surprise testimony and cannot be used to supply the anticipated testimony.

448 F.2d at 1263 [citations omitted].

In *United States v. Morlang,* 531 F.2d 183 (4th Cir. 1975), Judge H. Emory Widener, Jr., stated:

> [I]t has never been the rule that a party may call a witness where his testimony is known to be adverse for the purpose of impeaching him. To so hold would per-

mit the government, in the name of impeachment, to present testimony to the jury by indirection which would not otherwise be admissible. The courts have consistently refused to sanction such a practice.

531 F.2d at 189.[6]

Judge Henry J. Friendly dealt with a similar situation in *United States v. Cunningham,* 446 F.2d 194 (2d Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 302, 30 L.Ed.2d 266 (1971).

> [T]he prosecutor's interrogation of Agent Swayze was clearly improper. It did not constitute allowable impeachment since . . . "[t]he maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised," and "where the witness gives no testimony injurious to the party calling him, but only fails to render the assistance which was expected by professing to be without knowledge on the subject, there is no reason or basis for impeachment. . . ." If the question was intended to elicit an answer that could be used as affirmative proof, it falls within the ban of *Bridges v. Wixon,* 326 U.S. 135, 150–154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); indeed, the facts are less favorable to the Government than in that case since there the prior statements had been stenographically recorded. . . .
> The risk of going further is illustrated by this case where, in addition to the dangers against which the hearsay rule is meant to protect, the issue whether the declarant ever made the statement requires resolution of a swearing contest between himself and the police.

446 F.2d at 197–98 [footnote and citations omitted].

This court said in *Goings v. United States,* 377 F.2d 753 (8th Cir. 1967):

> The only motive the government had in reading the statement in front of the

---

**6.** Here the record does not dispute defendant's claim that the government was fully aware that Baker had similarly refused to testify before the grand jury. The presence of agent Brown throughout the trial is a strong indication that the government anticipated introducing Baker's prior statement.

jury was an attempt to inject hearsay evidence into the case as substantive proof. If this procedure is approved, then ex parte statements may be substituted for courtroom testimony as long as the witness, friendly or hostile, is present to be cross examined by the other side. 377 F.2d at 762.

All this emphasizes the strength of the rule against admitting prior statements of a witness who has not harmed the prosecutor's case.

The majority suggests, in any event, there was no prejudice in the use of the statement since the reliability of the out-of-court statement was clear; the statement was not "crucial to the government's case;" the statement, in effect, was cumulative because of the overwhelming evidence of guilt; and finally, its use was limited by the court's instruction that the jury was to consider the statement as impeachment only.

In all due respect, I must disagree with this analysis. The record disputes it.

First, the statement is the most abhorrent kind of hearsay; it was not given under oath, and it was oral, later transcribed by agent Brown outside of the presence of the witness from notes allegedly made during his interview. Contrary to the majority's analysis, and as conceded by the government, the declarant was *not* available for cross-examination. Furthermore, it is difficult for me to understand how the declarant's admission of his own guilt makes the reliability of his statement "clear."

Second, to say that the statement was not "crucial" underestimates the government's obvious strategy as to its use. The statement served no useful impeachment purpose since Baker had not testified adversely to the government's case; he simply failed to supply needed testimony. This was an event the government had fully anticipated. The only purpose for admitting the prior statement was to provide for a crucial omission in the evidence—placing the defendant at the scene of the crime. This is made obvious in the government's closing argument when the prosecution once again read the statement *en toto* to the jury—not to impeach Baker, but to provide complete identification of the defendant and the alleged details of his participation in the crime. To the layman this would seem a good way to convict the accused. As lawyers, we should know better.

The majority urges that the statement was simply cumulative. None of the four independent eyewitnesses of the robbery could identify the defendant as one of the hold-up men. The incriminating details set forth by the majority opinion provide sufficient circumstantial proof to submit the question of defendant's guilt to the jury. However, the defendant attempted to explain these circumstances. With the testimony in such a delicate balance, and without eyewitness identification, it was critical for the government to provide identification through Baker's statement.

If *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), is still the law, and if "one cannot say, with fair assurance . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected," I have grave difficulty in writing off the evidence as "cumulative."

The court's limiting statement may have been curative under *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). However, this decision was overruled in *Bruton,* when the Court observed:

Here the introduction of Evans' confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all. See *Anderson v. United States,* 318 U.S. 350,

**506**

356–357, 63 S.Ct. 599, 87 L.Ed. 829; cf. *Burgette v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319.

391 U.S. at 137, 88 S.Ct. at 135.

In view of the overwhelming prejudice to the defendant I fail to see the curative effect of such instructions.

Principles of fairness provide the foundations to rules governing criminal trials. "Foremost among these concepts is the principle that men should not be allowed to be convicted on the basis of unsworn testimony. *Bridges v. Wixon,* 326 U.S. 135, 153–54, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945)." *United States v. Morlang, supra,* 531 F.2d at 190.

I would reverse and require the defendant be given a fair trial.