**STATE of South Dakota, Plaintiff and Respondent,**

v.

**William P. SMITH, Defendant and Appellant.**

**No. 12567.**

Supreme Court of South Dakota.

Argued May 15, 1979.

Decided July 11, 1979.

Kevin F. Manson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Judd Golden, Des Moines, Iowa, for defendant and appellant; Michael A. Lyons, Sioux Falls, on brief.

DUNN, Justice.

Defendant William P. Smith appeals from his conviction in the Circuit Court of the Second Judicial Circuit of possession of marijuana in violation of the Drugs and Substances Control Act embodied in SDCL 39–17.[1] We affirm.

On July 20, 1977, Smith was arrested by detectives of the Sioux Falls Police Department, and his truck and its contents were impounded. An affidavit was then executed for a search warrant for the impounded items. A search warrant was is-

---

1. Now SDCL 34–20B.

sued within hours upon a finding of probable cause by a magistrate. The ensuing search resulted in the seizure of suspected controlled substances which were sent to the State Chemical Laboratory in Vermillion, South Dakota, for scientific testing purposes. Testing resulted in identification of 66.57 ounces of marijuana, as well as cannabis residue, cannabis seeds and pentobarbital. On July 27, 1977, a Minnehaha County Grand Jury handed down an indictment for Smith on one count, to-wit: possession of marijuana in excess of one ounce in violation of SDCL 39–17–95. On August 29, 1977, Smith filed a motion to suppress evidence, and a hearing was held on that motion on September 28, 1977. On November 17, 1977, the trial court entered an order denying the motion to suppress evidence. Smith entered a plea of not guilty to the charge set forth in the indictment. Smith had previously waived the right to trial by jury, and the case proceeded to trial before the court on January 11, 1978. On April 3, 1978, the trial court found Smith guilty as charged in the indictment and ordered a presentence investigation. On August 15, 1978, the trial court sentenced Smith to four years in the state penitentiary.

On appeal, Smith contends that the trial court erred in denying his motion to suppress evidence for the reasons that there was a lack of probable cause for the warrantless arrest, that the affidavit in support of the search warrant was insufficient to meet the requirements for a showing of probable cause, and that the trial court permitted testimony in addition to that contained within the affidavit in support of the search warrant in the hearing on the motion to suppress the evidence.

With regard to Smith's contention that there was a lack of probable cause for the warrantless arrest, we note that the arrest could be valid only if a public offense was committed or attempted in the detectives' presence or if a felony had in fact been committed and the detectives had reasonable cause for believing that Smith committed the felony. SDCL 23–22–7(1), 23–22–7(3). In *McGillivray v. Siedschlaw,* 278 N.W.2d 796 (S.D.1979), we stated that this requirement of reasonable cause has been held to be equated with the Fourth Amendment's requirement of probable cause. In *Klingler v. United States,* 409 F.2d 299, 303 (8th Cir. 1969), probable cause was found to exist

> where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime has been or is being committed.

Further, both reasonable cause and probable cause must be measured against an objective standard. *McGillivray v. Siedschlaw,* 278 N.W.2d 796 (S.D.1979).

With this standard in mind, we must review the facts that the arresting officers had before them in order to determine whether probable cause existed for the warrantless arrest.

In June of 1977, as a result of a continuing investigation by the Sioux Falls Police Department, detectives pieced together information from several sources regarding a drug-running operation from Des Moines, Iowa, to Sioux Falls, South Dakota, referred to as the "Jamaican Express."[2] Detectives learned that an individual by the name of Smith was in charge of the operation out of Des Moines and used a truck to transport drugs into Sioux Falls. The detectives received information that an unlimited quantity of marijuana could be received on any Wednesday evening or Thursday morning if an order were placed by the preceding Monday evening to a Des Moines phone number, i. e., Smith's number. Informant Isonhood provided information that he had known Smith for about two months prior to July 20, 1977, and that he had seen Smith with a suitcase containing

2. The basic operation of the Jamaican Express was explained to detectives by Charles Wheeler in June of 1977, by Daniel Bengston on June 24, 1977, by Roger Reedy on July 14, 1977, and by Willie Isonhood on July 20, 1977.

marijuana at the residence of Dick Clark and Michael Hastings.[3] Isonhood also provided detectives with a description of Smith. Informant Isonhood further provided information that he personally made arrangements while under the employment of Avis Rent-A-Car of Sioux Falls for Smith to acquire a rental car on a cash basis for short-term use. The informant stated that he had driven Smith from Avis Rent-A-Car to Smith's truck while Smith picked up what was alleged to be the drugs from the trucking run from Des Moines. Detectives also learned that another "load" was coming in from Smith on Wednesday night, July 20, 1977. On that date, detectives staked out the Avis Rent-A-Car office and observed a truck with Iowa license plates pull into an adjoining parking lot. The driver walked from the truck to the Avis Rent-A-Car office, and moments later, the driver exited and drove a rental car over to the truck. The detectives ascertained from an employee at the Avis Rent-A-Car office that the driver was indeed William P. Smith. The detectives observed Smith as he drove the rental car to the driver's side of the truck, removed a number of articles from the cab and placed them on the ground. At that point, detectives made a warrantless arrest of Smith and impounded the truck, its contents, and the articles from the cab which were removed by Smith prior to the arrest.

On the basis of these facts before the detectives and after reading the record, we are convinced that the detectives had "reasonably trustworthy information" and that a "man of reasonable caution" could conclude that a crime had been or was being committed and that Smith was a prime actor in such criminal activity. Therefore, the requirement of probable cause was satisfied and the warrantless arrest was valid.

We next address Smith's contention that the trial court erred in permitting testimony in addition to the information contained within the affidavit in support of the search warrant in the hearing on the motion to suppress the evidence.

The trial court conducted a hearing on the motion to suppress evidence to ascertain the existence of probable cause for the issuance of the search warrant. In addition to considering the affidavit in support of the search warrant, the trial court heard the testimony of the affiant and another detective. While the testimony, in addition to the affidavit, could properly be considered by the trial court in its determination of probable cause for the warrantless arrest in the objective sense, such testimony is not to be considered in a determination of probable cause for the issuance of the search warrant. In South Dakota, probable cause must be found in the affidavit or duly transcribed sworn testimony given before the warrant is issued. SDCL 23–15–2 and 23–15–8. In reviewing the determination of probable cause by the magistrate, only the evidence presented in support of the search warrant must be considered. *State v. Gerber,* 241 N.W.2d 720 (S.D.1976). The state is not allowed to bolster the probable cause or lack thereof on the face of an affidavit in support of a search warrant on the basis of additional information known to the police at the time the search warrant was applied for. *State v. Robinette,* 270 N.W.2d 573 (S.D.1978). Therefore, the existence of probable cause for the search warrant must rise or fall on the affidavit itself which was the only evidence presented to the magistrate for his determination of probable cause.

We address Smith's final contention that the affidavit in support of the search warrant was insufficient to meet the requirement for a showing of probable cause. To make this determination, we look to the four corners of the affidavit which contains the sworn statement of a Sioux Falls detective. With the exception of the caption, the affidavit contained the following information:

1. That on June 15, 1977, your Affiant is aware, through a report filed by Detective RALLIS, of the narcotics Division, that an individual by the name of JEFF-

3. See *State v. Clark and Hastings,* 281 N.W.2d 412 (S.D.1979).

REY BURKMAN was arrested for Distribution of a Controlled Substance. This arrest was based, in part, according to Rallis, from an informant indicating that Burkman, Gary LaFrantz and Charles Wheeler were receiving shipments of narcotics from a trucking operation labeled "Jamacian [sic] Express", that narcotics received from this operation were received during late evening and early morning hours on Wednesday-Thursday. That an unlimited quantity of Columbian marijuana and Mexican Marijuana could be received from this source if an order were placed to a subject living in Des Moines on Monday evening. Rallis further indicated to your Affiant that he received information from CHARLES WHEELER, arrested at the same time as JEFFREY BURKMAN, approximately, that GARY LaFRANTZ was using this "Jamaican Express".

2. Your Affiant states that at 9:15 a. m. on July 20, 1977, while serving a search warrant served at Trailer # 47, at Weegs Trailer Court, at 12th Street and I–29, I arrested an individual by the name of WILLIE ISONHOOD, JR. for felony possession of a Controlled Substance, to-wit: Marijuana and seized in that search warrant were other drugs believed to be Cocaine and high quality Marijuana. Mr. Isonhood, following complete advisal of his constitutional rights provided your affiant with the following information. Isonhood indicated to your affiant that he had received considerable amount of the drugs which he had been distributing from two individuals, one by the name of MIKE HASTINGS and the other by the name of DICK CLARK. He had purchased cocaine from these individuals on July 19, 1977. He further indicated to your Affiant that Clark and Hastings were getting their drugs from a trucking operation, placing their orders on Monday night and receiving their orders on late Wednesday night, early Thursday morning. Isonhood indicated to your affiant that he, Isonhood, had at one time, worked for Avis Rent-a-Car and he personally had made arrangements for the driver of the truck to get a rental car on a cash basis for short term use, a procedure not normal policy for Avis. Further, on one occasion, Isonhood had actually driven the driver of the truck from Avis Rent-a-Car back to his truck while he picked up what was alleged to be the drugs from the trucking drug run. Isonhood indicated that he had understood from Clark that the truck would be coming into town this evening, July 20, 1977, with a delivery to be made by the driver, Smith, around 7:00 p. m.

3. Your Affiant further states that he and Detective McKelvey checked with Avis Rent-a-Car and Avis's records indicate that on May 25, 1977, June 1, 1977, June 8, 1977, July 13, 1977 the above named defendant as also named by Isonhood, had, in fact, rented a car between 5:00 p. m. and 6:00 p. m., returning the same early the next morning. Avis further indicated to McKelvey that Smith was expected in between 5:00 p. m. and 6:00 p. m. on July 20, 1977, and that normally in the past, he did not carry luggage with him.

4. Your Affiant staked out Avis Rent-a-Car between 4:20 p. m. and 6:00 p. m. on July 20, 1977, and that at approximately 4:30 p. m. a semi pulled onto the adjoining lot, the semi is described as a Ford truck Iowa license RC 1374 pulling trailer RM 4603 and the driver exited the truck and walked to the Avis Rent-a-Car office. Moments later, the driver exited and drove a rental car over to the truck. At that time, MR. KOLSETH of Avis indicated to your Affiant via telephone call to Detective McKelvey, that that was the William Smith we were interested in. Mr. Smith drove the rental car to the driver's side of the truck and removed a number of articles from the cab, placing them on the ground. Your Affiant approached Mr. Smith and arrested him for felony Possession of Controlled Substance, and your affiant observed in plain view, on the floor of the truck, a baggie of green leafy substance, appearing to be a lid of marijuana and a hash pipe. The

above described truck and trailer was impounded and towed to Jim and Ron's, 1900 West 12th Street, Sioux Falls, South Dakota, and brought to the Sioux Falls Police Department with Mr. Smith was a blue Pullman overnight case and a green smaller train case and a large, green, leather wallet. These three pieces of luggage have a strong odor of marijuana and this odor was reinforced in its analysis by Special Agent ROBERT LAWTON of the Federal Drug Enforcement Agency.

BASED on the foregoing information and facts, your Affiant has probable cause to believe and does believe that the above named defendant has committed the crime of Possession of Controlled Substance, in violation of SDCL 39–17, and contained within the hereinbefore mentioned, truck, trailer and luggage, is evidence necessary for prosecution.

WHEREFORE your Affiant requests this court given the late hour of the day, to issue its search warrant for any time of the day or night to search the Ford truck, license number Iowa, RC 1374 and trailer, Iowa license number RM 4603, currently held at Jim and Ron's 1900 West 12th Street, Sioux Falls, South Dakota, and also the above described luggage, located at the Sioux Falls Police Department, and seize therefrom any items contained therein in violation of SDCL 39–17.

Dated at Sioux Falls, Minnehaha County, South Dakota, this 20th day of July, 1977.

■ In the context of search warrants, we have defined probable cause as "the existence of facts and circumstances as would warrant an honest belief in the mind of a reasonable, prudent man acting on all the facts and circumstances within the knowledge of the magistrate that the offense has been, or is being committed and that the property sought exists at the place designated." *State v. Robinette,* 270 N.W.2d at 577. Additionally, it is not necessary that there be a prima facie showing of legal evidence of a suspected act. The standard of probable cause required for the issuance of a search warrant is a showing of "probability of criminal activity." *State v. Kaseman,* 273 N.W.2d 716, 723 (S.D.1978). As we examine the affidavit, we must keep in mind the following standards of review set out in *State v. Kaseman* at 273 N.W.2d 722–723:

In reviewing the affidavits, we should not invalidate the search warrants by interpreting the affidavits in a hypertechnical manner; rather, we should read each affidavit as a whole and interpret each in a common-sense and realistic manner. *State v. Gerber,* 1976, S.D., 241 N.W.2d 720; *State v. Haron,* 1974, 88 S.D. 397, 220 N.W.2d 829; *United States v. Ventresca,* 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. Oftentimes it is hard to determine when an affidavit demonstrates the existence of probable cause, and the resolution of these marginal cases should be largely determined by the preference to be accorded to warrants. *State v. Kietzke,* 1971, 85 S.D. 502, 186 N.W.2d 551. Accordingly, every reasonable inference possible should be drawn in order to support the determination of probable cause by the magistrate. *State v. Glidden,* 1976, S.D., 246 N.W.2d 779. See also, *Spinelli v. United States,* 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

Turning to the affidavit, it gives background information regarding the "Jamaican Express." It reveals that at least two named informants stated that narcotics were received from the trucking operation out of Des Moines, Iowa, in that an unlimited quantity of marijuana could be received on any Wednesday evening or Thursday morning if an order were placed to a certain individual living in Des Moines by Monday evening. One of the named informants, Isonhood, supplied the name of the individual. Isonhood indicated that he had been an employee of Avis Rent-A-Car in Sioux Falls, South Dakota, and that he had personally made arrangements for the driver of the truck for the short-term use of a rental car on a cash basis by the truck driver from Des Moines. Isonhood also indicated that he had assisted the truck driver

by driving him back to his truck from the Avis Rent-A-Car office in order to pick up what was alleged to be the drugs from the trucking run. Isonhood further informed detectives that Smith would be making a delivery around 7 p. m. on July 20, 1977. The detectives corroborated the information given them by the named informants with regard to the regularity of Smith's shipments into Sioux Falls by checking with Avis Rent-A-Car records which revealed that on three consecutive Wednesdays and on the preceding Wednesday Smith had in fact rented a car between 5 p. m. and 6 p. m. An Avis employee further indicated to detectives that Smith was expected in between 5 and 6 p. m. on July 20, 1977, and that normally he did not carry any luggage. The affidavit further indicates that detectives watched the Avis Rent-A-Car office on July 20, 1977, and that a truck with Iowa license plates drove into an adjoining parking lot. They observed the driver rent a car, and upon learning that the driver was indeed William Smith, detectives arrested him at his truck. The affidavit further states that the detectives observed a baggie of green leafy substance which appeared to be marijuana in plain view on the floor of the truck. Also, three pieces of luggage that were impounded had a strong odor of marijuana about them as attested to by a federal drug agent.

■ We are convinced that the magistrate was informed of some of the underlying circumstances from which the affiant concluded that there were controlled substances to be found in the impounded articles and from which the affiant concluded after corroboration that the informants' information was reliable. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). See, *People v. Bolender,* 24 Ill. App.3d 804, 322 N.E.2d 624 (1974). With this information, the magistrate could properly conclude that there was a showing of probability of criminal activity sufficient for the issuance of a search warrant.

Therefore, the trial court did not commit reversible error in denying the motion to suppress evidence. We reach this conclusion after excluding all testimony given at the hearing in addition to the court's consideration of the information contained in the affidavit because the affidavit itself contains a showing of probability of criminal activity or probable cause sufficient for the issuance of the search warrant.

The judgment of the trial court is affirmed.

All the Justices concur.