**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kenneth M. GAGE, Defendant and Appellant.**

**No. 13139.**

Supreme Court of South Dakota.

Argued Nov. 19, 1980.

Decided March 4, 1981.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Catherine G. Ortner of Ortner & Ortner, Hot Springs, for defendant and appellant.

MORGAN, Justice.

A Fall River County jury found appellant guilty of first-degree robbery in violation of SDCL 22-30-1 and 22-30-7. The trial court sentenced him to serve ten years at the South Dakota State Penitentiary in Sioux Falls, South Dakota. Appellant appealed from that final judgment and sentence. We reverse and remand for a new trial.

Appellant had lived in Edgemont, South Dakota. Around 6:00 p. m. on February 1, 1980, he moved out of his Edgemont apartment. He loaded his belongings into his car and departed, stopping at a couple of places on his way out of town to say good-bye to friends.

At about 8:30 p. m. on that same evening, a man entered the Edgemont Mini Market. Patricia Bennett (Bennett), the cashier, was the only employee on duty, and no one else was in the store at that time. After taking money out of the till while pointing a gun at Bennett, the man fled from the store.

On February 4, 1980, a warrant was issued for appellant's arrest for committing first-degree robbery. The arrest warrant was issued on the basis of Officer Ronald

Berens' affidavit,* which incorporated his report of the robbery into it. The portion of the report used as the basis for the issuance of the arrest warrant read as follows:

I talked to a lot of people and one girl said that she new [sic] who robbed the Mini Market but didn't want her name in it. I told her that it wouldn't be. She said that Ken Gage said he was going to rob the Mini Market and go to Rapid City and then to Missouri.

When appellant returned approximately two weeks later from where he had been living in Nebraska, the police arrested him for armed robbery.

Various pretrial motions were made and hearings held. The State refused to identify the informant who was apparently going to testify that appellant had told her he was going to rob the Edgemont Mini Market. Two weeks before the trial, however, the trial court said that, absent disclosure, the State would not be allowed to present the testimony to the jury. The State, therefore, revealed the name of the informant.

Five days before the trial, defense counsel obtained the address and phone number of the previously undisclosed informant. Consequently, defense counsel was unable to interview the informant until the day before the trial. At that time the informant denied having said that appellant made the incriminating statement to her. In fact, she denied having ever made *any* such report to the police.

On the following day, just prior to commencement of the trial, appellant's lawyer made several motions, one of which was to suppress the results of the pretrial lineup. Defense counsel attempted to have the lineup identification suppressed as the fruits of an improper arrest, in that the affidavit upon which the arrest warrant was based lacked probable cause since it contained false information. The false information related to the informant's statement that appellant had told her he intended to commit the robbery. This was the first time that the discrepancy was brought to the trial court's attention.

The State objected to the motion, alleging it had not been timely made, and then stated, "Nothing in that statement says that this [informant] had had the conversation with [appellant]." The trial court denied the motion stating, "As to probable cause, the proceeding, the record prior to this hearing, and trial are my support for that decision." The trial court made it clear that the motion was not denied because of its untimeliness. The exact basis was "[t]he preliminary hearing, the other motions that we have had and the testimony that has been established."

Appellant was tried before a jury, which found him guilty of first-degree robbery. After the trial court sentenced appellant to serve ten years at the state penitentiary, appellant appealed from the whole of the judgment of conviction and the sentence.

█ Appellant contends that the trial court erred in denying the motion to suppress the results of the pretrial lineup. In determining whether the lineup should have been suppressed, this court must first decided the basic question whether there was in fact sufficient probable cause upon which to base the warrant for appellant's arrest. The United States Supreme Court case of *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), is pertinent.

The language of the Fourth Amendment, that "... no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describ-

---

* The affidavit, in pertinent part, read:

Ronald Berens, being first duly sworn, deposes and says as follows:

That he is a law enforcement officer with the Edgemont Police Department (Fall River County Sheriff) and in such capacity makes this affidavit.

That he is the officer who prepared the official report attached hereto as Exhibit "A" and made a part hereof as if set forth in ex tenso.

That said report is made upon his own best knowledge except as to those matters alleged therein on information and belief, and to those matters, he believes them to be true.

ing . . . the persons or things to be seized," of course applies to arrest as well as search warrants. Id. at 485–486, 78 S.Ct. at 1250, 2 L.Ed.2d at 1509.

■ This court has not yet had occasion to pass upon the question whether the same requirements for a search warrant are applicable to an arrest warrant. We do so now and adopt *Giordenello*, which states that they are applicable.

With respect to the sufficiency of affidavits in support of search warrants, this court has long recognized the *Aguilar-Spinelli* two-pronged test for demonstrating credibility and reliability on the part of an informant.

The *Aguilar* test goes to the reliability of the informant's information. As we said in *State v. Kietzke*, 85 S.D. 502, 510, 186 N.W.2d 551, 556 (1971): "The magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant was reliable. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723." *Spinelli* goes to the reliability of the informant himself. "[I]t is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637." *State v. Kietzke*, supra.

■ The affidavit-report in this instance was utterly devoid of any showing of the reliability of the informant herself, particularly as to the source of her knowledge. The State's argument at the suppression hearing that the report did not say what it appeared on its face to say, only emphasizes the need for the inclusion of such information in the affidavit. Rather than being firsthand information of an admission against interests as it appeared to be on the face of this affidavit-report, it was at best

hearsay on hearsay. The State was not even able to introduce the testimony in support of its case-in-chief.

We are cognizant of the fact that "[t]he *Aguilar-Spinelli* requirements have been held not to apply to information supplied by identified bystanders or victim-eyewitnesses to a crime[,]" *State v. Haron*, 88 S.D. 397, 401, 220 N.W.2d 829, 831–832 (1974) (emphasis in original), or even to unidentified informants who give information that is corroborated before the issuance of the warrant. *State v. Gerber*, 90 S.D. 432, 241 N.W.2d 720 (1976). None of those circumstances, however, existed here.

Finally, at the *Franks*-type hearing just prior to trial, while the trial court did not state on the record that it was excising the false material in considering the affidavit, it indicated that it was doing so when it stated it was denying the motion because of "[t]he preliminary hearing, the other motions that we have had and the testimony that has been established." In *State v. Hibbard*, 273 N.W.2d 172 (S.D.1978), this court adopted the *Franks v. Delaware* test, wherein the United States Supreme Court stated:

In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978).

This court has also previously held: "In reviewing the determination of probable cause by the magistrate, only the evidence presented in support of the search warrant must be considered." *State v. Smith*, 281 N.W.2d 430, 433 (S.D.1979); *State v. Gerber*, supra.

"[T]he existence of probable cause for the search warrant must rise or fall on the

affidavit itself which was the only evidence presented to the magistrate for his determination of probable cause." *Smith*, supra. In the instant case, once the informant's statement is stricken from the affidavit-report, and we hold that it should have been, there is virtually nothing left to implicate appellant in the robbery.

The trial court in this case had to rely on after-acquired information, which it may not do, to establish the probable cause for the arrest warrant, since no such probable cause existed in either the police report or the affidavit.

Not only should the pretrial lineup in this case have been suppressed, but the arrest itself was unlawful and cannot be justified by the fruits of an incidental search and seizure or by other after-acquired information. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Klingler v. United States*, 409 F.2d 299 (8th Cir. 1969); *Pigg v. United States*, 337 F.2d 302 (8th Cir. 1964).

We point out, however, that an accused may not "claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547 (1980). We therefore will not, on the basis of the facts presented in this case, order a judgment of acquittal to be entered.

In *Crews* the trial court ruled the pretrial photographic and lineup identifications inadmissible evidence because they were the products of an arrest without probable cause, and the same should also have been done in this case. The *Crews* trial court, however, allowed the victim's in-court identification of the accused to be introduced, since it had determined that said identification was based upon an independent recollection which was untainted by the intervening and inadmissible identifications. No such conclusion, however, as to independent

recollection was reached by the trial court involved herein, so we will not determine whether Bennett's in-court identification of appellant was tainted by the inadmissible pretrial lineup and attempted photographic identifications. See *State v. Sahlie*, 90 S.D. 682, 245 N.W.2d 476 (1976).

Appellant next alleges prosecutorial misconduct. Immediately prior to trial, the trial court granted appellant's motion in limine to prohibit the State from eliciting the age of appellant's girl friend until after she testified, at which time the trial court would reconsider its position. The state's attorney called the girl friend as a rebuttal witness and asked her name, her residence, and then, "How old are you?" The girl friend answered before defense counsel could object. The trial court recessed to chambers, out of the jury's hearing, for further proceeding. Defense counsel moved for a mistrial since the jury's knowledge of the girl friend's age was prejudicial to appellant's right to a fair trial, but the trial court denied the motion. The trial court then told the state's attorney not to discuss the girl friend's age any further, after which the trial court and counsel agreed to give a cautionary instruction on the matter.

The state's attorney in this case asked the question in direct violation of the trial court's order. We find such behavior contemptible and inexcusable. "It is axiomatic to a fair trial that the state obey the court's orders concerning the conduct of the trial . . . . It is well to keep in mind that a prosecutor's duty is not simply to convict but to do justice." *State v. Sahlie*, supra, at 688, 245 N.W.2d at 479. The State, however, claims that "[t]he violation resulted only in harmless error."

Similar remarks by state's attorneys in other cases have been held by this court to be reversible error, even where the objection has been sustained and cautionary instructions were given . . . .

. . . . . . .

The state, nevertheless, asks us to conclude that the defendant received a fair and impartial trial despite the prejudicial

effect of the question propounded by the state's attorney. The state in effect is urging that the fundamentals of a fair trial need not be respected so long as the proof persuades us of the defendant's guilt.

We, however, are of the opinion that the harmless error rule ought never be used to justify unfairness at the trial. *State v. Webb*, 251 N.W.2d 687, 689 (S.D. 1977).

■ " '[W]e must remind prosecutors that it is the foundation of the criminal justice system to see that the defendant and every defendant gets his day in court and *a fair trial*. This burden weighs as heavily on prosecutors as it does on judge, jury and defense counsel.' " *State v. Kidd*, 286 N.W.2d 120, 123 (S.D.1979) (emphasis added), quoting *State v. Havens*, 264 N.W.2d 918, 923 (S.D.1978). Unlike *Kidd*, the defense counsel in this case made timely objection, moved for a mistrial, and requested a cautionary jury instruction. Under the facts of this case, the state's attorney's question was so improper and highly prejudicial that the trial court should have granted defense counsel's motion for mistrial.

■ Appellant also alleges that the trial court erred by allowing the State to impeach one of its witnesses when the sole purpose in offering the impeached testimony was to get before the jury testimony that otherwise would have been inadmissible hearsay. We agree.

The State was unable, in its case-in-chief, to put the informant on the stand to testify that appellant's girl friend had told her that appellant told the girl friend that he was going to rob the Edgemont Mini Market, since such testimony would have been inadmissible hearsay under SDCL 19–16–4, as defined in SDCL 19–16–1(3).

Upon being asked what his reaction was when his girl friend told him that the police were asking questions about him concerning the Edgemont Mini Market robbery, appellant replied, "It didn't bother me because I didn't do it." On cross-examination, the state's attorney asked appellant if he had telephoned his girl friend and admitted to her that he had robbed the Edgemont Mini Market. Appellant denied such.

As is reflected in the record, the State, on rebuttal, called appellant's girl friend only to question her regarding whether appellant had told her about his alleged intentions to rob the Edgemont Mini Market, and whether she had told the informant such. The girl friend denied having had any such conversations. The State immediately called the informant as a witness to testify that the girl friend had in fact had such a conversation with her. This testimony was presented on the pretext of impeaching the girl friend on the basis of a prior inconsistent statement.

*United States v. Rogers*, 549 F.2d 490, 495 (8th Cir. 1976), sets out four "requirements founded in fundamental fairness [for] the use of prior inconsistent statements for impeachment." They are as follows:

1) Inconsistency: The statements must be inconsistent.

2) Relevancy: The inconsistency must "relate to a matter of sufficient relevancy that the prosecution's case will be adversely affected if the inconsistent testimony is allowed to stand." Id. at 496.

3) Compliance with Rule 613 (SDCL 19–14–24 and 19–14–25): The prior statement must, on request, be shown or disclosed to opposing counsel, and "if extrinsic evidence is to be used to prove the prior statement, the witness must be afforded an opportunity to explain or deny it, and the opposing party must have an opportunity to interrogate the witness about it." Id. at 497.

4) Limiting instructions: The trial court "must adequately instruct the jury about the limited purpose for which the prior inconsistent statement is admitted." Id.

In this case, the requirements of inconsistency and compliance with SDCL 19–14–24 and SDCL 19–14–25 were met. The requirements for relevancy and limiting instructions, however, were not.

With regard to relevancy, there is nothing whatsoever in the record that leads us to conclude that the State's case would have been adversely affected if the girl friend's denials of the alleged telephone conversation and the alleged conversation with the informant had been allowed to stand.

Although defense counsel here did not propose South Dakota Pattern Jury Instruction, Criminal, 1–17–8, which specifically deals with impeachment by prior inconsistent statement, she did request that the cautionary instruction, "Evidence of a claimed oral admission of the defendant ought to be viewed with caution and weighed with care," South Dakota Pattern Jury Instruction, Criminal, 1–16–4, be given, but the trial court refused it. In fact, the trial court gave no cautionary or limiting instruction concerning this matter. The content of the impeaching testimony was of such a character and so highly prejudicial to appellant's ability to obtain a fair trial, that some sort of cautionary or limiting instruction should have been given. At the bare minimum, appellant's proposed instruction should have been given.

In view of the fact that two of the four requirements for the use of prior inconsistent statements for impeachment purposes are so wholly lacking, we hold that under the facts of this case, reversible error has occurred.

Additionally, this case is one in which a witness (the girl friend) was called by the State only to serve as a "strawman" for the introduction of inadmissible hearsay (by the informant). The State called the girl friend on the pretense of having her impeach appellant, but she did not do so, and there is nothing in the record to indicate that the State actually thought she would do so. On the contrary, there is reference in the record that the State may have considered the girl friend to be a hostile witness.

> While it is now proper for a party to impeach his own witness, Fed.R.Evid. 607 [and SDCL 19–14–8], "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975) .... Here, the statement made ... is hearsay and is generally inadmissible for substantive purposes.

*Whitehurst v. Wright,* 592 F.2d 834, 839 (5th Cir. 1979) (emphasis in original). In *Whitehurst,* unlike this case, the trial court did not allow the impeaching testimony.

> Mrs. Whitehurst contends that the trial court erroneously refused to allow her to impeach her own witness .... The witness, Detective Cecil Humphrey of the Montgomery Police Department, was called solely to establish whether he had fired the single spent round in the gun found next to Whitehurst's body. Humphrey denied that he had fired the gun, and Mrs. Whitehurst was aware that he would so testify. Nevertheless, she called him to the stand with the express purpose of impeaching him with an out of court statement made by Humphrey to his friend, Lt. J. C. Cunningham, to the effect that he had fired the gun.
>
> ... Mrs. Whitehurst asserts on appeal that she would have called Lt. Cunningham "to establish Humphrey's role concerning the pistol firing ...." To use a prior inconsistent statement in that manner exceeds the scope of impeachment, and is an attempt to use hearsay evidence for substantive purposes. We do not believe that the rules of evidence espouse such a revolutionary approach to circumvent the traditional principles of hearsay.

Id. at 839–840 (footnote omitted).

Under the facts of this case, there was an obvious subterfuge by the State to get the informant's testimony, consisting only of inadmissible hearsay, before the jury under the guise of impeachment. Such "backdooring" of hearsay is not indicative of fair trial tactics, and the trial court in this case should have sustained defense counsel's objection to the testimony on the basis that it was hearsay.

In view of our holdings in this case, we have effectively disposed of all other issues raised.

Accordingly, we reverse and remand for a new trial.

All the Justices concur specially.

WOLLMAN, Chief Justice (concurring specially).

Although I agree that the conviction should be reversed, on the basis of the record before us I would not hold that the trial court committed reversible error in not granting appellant's motion for new trial based upon the state's attorney's question to appellant's girl friend regarding her age. That the trial court was concerned about the state's attorney's violation of the pretrial order is obvious from the in-chambers colloquy following defense counsel's objection. Nevertheless, the trial court stated that it did not view the question and answer thereto as being sufficiently prejudicial to warrant granting the motion for a mistrial. Moreover, the trial court instructed the jury, at defense counsel's request, that any testimony regarding the witness' age was not to be considered by the jury.

Although I agree that the intentional violation of a trial court's order is inexcusable, not every such violation mandates reversal of a conviction. I would defer to the trial court's on-the-scene determination that the granting of the motion for mistrial was not warranted in the circumstances of this case.

I agree that the State's effort to put before the jury the informant's testimony regarding appellant's alleged admission was an obvious subterfuge. I would only note that the trial court, at defense counsel's request, did instruct the jury during the course of closing arguments that the informant's testimony was to be considered only for the purpose of impeaching the testimony of appellant's girl friend. Although this instruction was not reduced to writing, the record does not reveal that defense counsel made a request that the supplemental instruction be reduced to writing.

FOSHEIM, Justice (concurring specially).

I agree that there was no probable cause for issuance of the arrest warrant. Conced-ing that appellant's presence at the pretrial lineup was a direct result of the illegal arrest, the testimony concerning the victim's out-of-court identification of appellant should have been excluded. It may be noted, however, that there was no connection between the illegal arrest and the victim's in-court identification of appellant as the person who robbed her. The authorities' knowledge of appellant's identity and the victim's independent recollections of him both predated the illegal arrest. The victim's presence in the courtroom was not the result of any police misconduct, nor can appellant challenge his own presence in the courtroom. As stated in *United States v. Crews*, 445 U.S. 463, 471–72, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537, 546 (1980), "this is not a case in which the witness' identity was discovered or her cooperation secured only as a result of an unlawful search or arrest of the accused."

A determination that an independent origin existed for the in-court identification would find support in the record. The victim observed appellant at very close range for three or four minutes during the course of the robbery. She watched him closely because "when he pulled the gun on me, I froze for a minute and just looked at him." That she noted carefully his appearance is borne out by the detailed description she gave the police. She described appellant accurately as to height and weight, and readily recalled details of his clothing style and color. The investigating officer testified that he elicited the description from her three times and that there were no discrepancies. Thus, while the intervening out-of-court identification may be conceded to be a suppressible fruit of a Fourth Amendment violation, her in–court identification was based upon the mental image formed at the time of the robbery if, at trial, "she retrieved this mnemonic representation, compared it to the figure of the defendant, and positively identified him as the robber." *United States v. Crews*, 445 U.S. at 472, 100 S.Ct. at 1250, 63 L.Ed.2d at 546. The trial court, however, was not called upon to rule on the admissibility of the in-court identification. Thus, as Justice

Morgan's opinion points out, there is no reviewable issue concerning the existence or absence of an independent origin for the victim's in-court identification. *Cf. State v. Reiman*, 284 N.W.2d 860, 872 (S.D.1979).

I am authorized to state that Justice Dunn and Justice Henderson join in this special concurrence.